UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN-N-OUT BURGERS,

    Plaintiff, Counter-defendant

v.

DOLL N BURGERS LLC,
DOLL N BURGERS TECUMSEH, LLC, DOLL N BURGERS JACKSON, LLC, VERITAS VINEYARD, LLC,
and JUSTIN DALENBERG,

    Defendants, Counter-plaintiffs.

Case No.  3:20-cv-11911

Hon. Robert H. Cleland

Anthony P. Patti,
Magistrate Judge

JURY DEMANDED

**ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, FIRST AMENDED COUNTERCLAIMS AND RESTATED JURY DEMAND**

Defendants Doll n' Burgers LLC, Doll n' Burgers Tecumseh, LLC, , Doll n' Burgers Jackson, LLC, Veritas Vineyards, LLC and Justin Dalenberg answer plaintiff's complaint and file this counterclaim and jury demand.

For convenience only and without admission or adverse inference, defendants utilize plaintiff's acronyms and definitions for In-N-Out Burgers (INO), the two corporate defendants Doll n' Burgers LLC and Doll n' Burgers Tecumseh LLC (collectively DNB), "INO Common Law Trade Dress," "INO Registered Trade Dress," and "INO Trade Dress."

Defendants replicate the major headings in plaintiff's complaint for convenience only and without admission or adverse inference.  Defendants deny any allegation that is not expressly addressed in this answer.

**PARTIES**

1

1. Defendants admit that INO is a California corporation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Defendants admit that defendant Justin Dalenberg is a founder of DNB, admits that he has described himself as "Chief Burger Flipper" of DNB, admits he resides in this judicial district, and admits that he has been involved in the majority of business decisions at DNB involving defendants' restaurant décor, signage, packaging, uniforms, etc. Defendants deny as untrue that Dalenberg bears individual liability for any conduct alleged in the complaint.

7. Denied as untrue that Doll n' Burgers LLC has any responsibility for, or is actively involved in operating the Doll n' Burgers restaurant in either Tecumseh or Jackson. Defendants affirmatively state that with respect to operating the Tecumseh and Jackson restaurants, Mr. Dalenberg at all relevant times acted as an agent of Doll n' Burgers Tecumseh LLC and Doll n' Burgers Jackson LLC and for their benefit, and not for his individual benefit. Defendants deny as untrue that Veritas Vineyards, LLC is materially involved in the operations of the DNB Restaurants. Defendants admit the remainder of this paragraph.

**JURISDICTION AND VENUE**

8. This paragraph states allegations of law to which no response is required.

9. Admitted that this Court has subject matter jurisdiction.

10. Admitted that venue is proper.

## INO'S STRONG, NATIONWIDE GOODWILL

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

12. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

13. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

15. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

16. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

17. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

## INO'S WELL-KNOWN TRADE DRESS

18. Defendants deny as untrue that INO has exclusively used the nine alleged elements of what it calls "INO Common Law Trade Dress," whether singularly or in various combinations. Defendants affirmatively state that excepting element e ("white cups with red graphics featuring a line of palm trees near the top of the cup"), the listed elements are commonly found among restaurants. Defendants deny as untrue that the combination of the listed elements (again excepting element e) identify INO as a source of goods and services. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and its subparts.

19. Defendants admit that the USPTO issued Registration No. 4,839,216. The certificate of registration for the "INO Registered Trade Dress" speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

20. Defendants deny as untrue that the "INO Common Law Trade Dress" or "INO's Registered Trade Dress" or "INO Trade Dress" are distinctive or act as a source indicator. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of this allegation.

21. Denied as untrue.

22. Denied as untrue.

23. Denied as untrue.

24. Denied as untrue.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

### "DNB'S INFRINGEMENT OF THE INO TRADE DRESS"

26. Defendants admit only that they have publicly expressed a hope and desire to expand their restaurant concept to other locations, including other states and conceivably even "nationwide." The remainder of this allegation is admitted.

27. Admitted.

28. Admitted.

29. This paragraph and its eight subparagraphs span eight pages of the complaint, therefore violating FRCP 8(d)(1) (each allegation must be simple, concise and

direct), and frustrating direct and concise response. Defendants deny as untrue that they copied and/or closely imitated the alleged "INO Trade Dress" whatsoever. Defendants lack knowledge or information sufficient to form a belief whether this paragraph and its divers subparagraphs fairly and accurately depict plaintiff's décor, packaging, signage, etc. Defendants deny as untrue that DNB employee uniforms currently feature red aprons. Defendants deny as untrue that INO's features and elements described, singularly or in combination, comprise protectable trade dress. Defendants deny as untrue that the paragraph fairly and accurately describes and depicts DNB's décor, packaging, signage, etc. To the extent there are similarities between plaintiff's and defendants' décor, packaging, signage, etc., the similarities are not likely to cause consumer confusion and do not infringe INO's protectable trade dress.

30. Denied as untrue that DNB "borrowed" business methods from INO. Denied as untrue that any similarities accentuate the similarity and likelihood of confusion between DNB and INO trade dress. In further answer:

    a. DNB admits at least one steer is butchered daily for DNB purposes. DNB lacks knowledge or information sufficient to form a belief as to INO's practices.

    b. DNB admits it has on occasion provided people with free hot cocoa. DNB lacks knowledge or information sufficient to form a belief as to INO's practices.

31. Denied as untrue.
32. Denied as untrue.

5

33. Denied as untrue.

34. Denied as untrue that any of the alleged social media comments in subparagraphs (a) – (c) evidence customer confusion or actionable similarity between the parties' trade dress.

35. Denied as untrue.

36. (preamble):  Denied as untrue.

a.  Denied as untrue.

b.  Admitted that the INO and DNB both feature hamburgers, fries, soft drinks and milk shakes.

c.  Denied as untrue.

d.  Denied as untrue.

e.  On information and belief, denied as untrue.

f.  Denied as untrue.

g.  Denied as untrue.

h.  Defendants admit that they have publicly expressed a hope and desire to expand their restaurant concept to other locations, including other states and conceivably even "nationwide."  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of this allegation.

37. Admitted.

38. Admitted.

39. Denied as untrue.

40. Denied as untrue.

41. Denied as untrue.

**Count I**
**Trademark Infringement**
**Lanham Act – 15 U.S.C. § 1114(1)**

42. Defendants incorporate their responses to the prior paragraphs.

43. Defendants admit that plaintiff INO has registered its alleged trade dress bearing registration number 4,839,216. Defendants deny as untrue that INO exclusively owns or controls the trade dress described by that registration.

44. Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.

45. Denied as untrue.

46. Denied as untrue.

47. Denied as untrue.

48. Denied as untrue.

49. Denied as untrue.

50. Denied as untrue.

51. Denied as untrue.

**Count II**
**Federal Trade Dress Infringement and Unfair Competition**
**Lanham Act – 15 U.S.C. § 1123(A)**

52. Defendants incorporate their responses to the prior paragraphs.

53. Defendants deny as untrue this paragraph and each of its subparagraphs.

54. Defendant denies as untrue that the alleged INO Trade Dress is wholly nonfunctional. A large portion of the alleged INO Trade Dress is comprised of functional elements and/or components.

55. Denied as untrue.

56. Denied as untrue.

57. Denied as untrue.

58. Denied as untrue.

## Count III
## Trade Dress Infringement and Unfair Competition
## in Violation of Michigan Common Law

59. Defendants incorporate their responses to the prior paragraphs.

60. Denied as untrue.

61. Denied as untrue.

## Count IV
## Violation of Michigan Consumer Protection Act
## M.C.L. § 445.903

62. Defendants incorporate their responses to the prior paragraphs.

63. Denied as untrue.

64. Denied as untrue.

65. Denied as untrue.

## Count V
## Unjust Enrichment

66. Defendants incorporate their responses to the prior paragraphs.

67. Denied as untrue.

68. Denied as untrue.

69. Denied as untrue.

70. Denied as untrue.

71. Denied as untrue.

72. Denied as untrue.

73. Denied as untrue.

**AFFIRMATIVE DEFENSES**

1. Plaintiff's alleged décor, packaging, signage, etc. is not protectable trade dress under any statute or common law at least because it is not distinctive.

2. Plaintiff's alleged trade dress is essentially functional and incapable of legal protection under trademark or unfair competition law, such as walls, floors, countertops, chairs, barstools, upholstery, tables, menus, packaging, employee clothing, hats and aprons, and tables.

3. Plaintiff's alleged trade dress is not inherently distinctive and has not obtained secondary meaning anywhere, and specifically has not obtained secondary meaning nationwide or in Defendants' geographic market.

4. Plaintiff's alleged trade dress and defendants' alleged trade dress are dissimilar and raise no likelihood of confusion.

5. Plaintiff is unlikely to serve the Michigan market.

6. Plaintiff is barred by unclean hands, and/or is engaging in trademark misuse, by improperly attempting to reserve for its own exclusive use generic and nondistinctive features commonly used in restaurants.

7. Plaintiff has acquiesced to use of many or most of the elements alleged as INO's alleged trade dress, including use by Five Guys, Steak N' Shake, Checkers, Freddy's, KFC, Arby's, Popeye's Chicken & Biscuits, Del Taco, and other establishments including but not limited to those attached to the Trademark Examiner's 5/28/2014 and 12/18/2014 Office Actions refusing registration of INO's Registered Trade Dress.

8. Defendants reserve the right to add to or amplify these affirmative defenses as they learn additional information.

## FIRST AMENDED COUNTERCLAIMS

Defendants and counter-plaintiffs Doll n' Burgers LLC, Doll n' Burgers Tecumseh LLC and Justin Dalenberg counterclaim against In-N-Out Burgers (INO) as follows.

1. Defendants incorporate by reference the admissions of parties, jurisdiction and venue contained in their answers to paragraphs 1-5, 7 and 8 of plaintiff's complaint.

## COUNT 1:  CANCELLATION OF REGISTRATION

2. On January 8, 2014, INO applied to the USPTO, U.S. trademark registration application no. 86160813, to register the service mark on the Office's Principal Register in class 043 (food preparation; restaurant services) for trade dress described as:

> The mark consists of a three-dimensional trade dress depicting the interior of a restaurant. The interior includes white sectional dividing walls having horizontal rows of red stripes. The interior also includes clear glass panels positioned above parts of the dividing walls. The interior also includes a customer seating area with one or more of booths, barstools and chairs, wherein the chairs are red and the booths have red upholstery, and white countertops and tabletops. The interior also features a gray tile floor in the customer seating area. The interior further includes a customer ordering area with sections of red tile walls and white tile walls around the customer ordering area and a stainless steel counter.

claiming the colors red, white and gray as features of the mark.

3. In its application, INO's attorney Valerie Sarigumba declared under penalty of perjury "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

4. On 5/28/2014, the Examiner refused registration based on sections 1, 2, 3, and 45 of the Trademark Act, correctly asserting that the claimed elements were not distinctive and thus could not serve as a source identifier.  The Examiner attached approximately 39 pages as evidence that the claimed elements were in common use.

5.      On 11/26/2014, INO responded to the Examiner's office action, arguing that the mark was distinctive when the totality of elements were considered as a whole.  INO specifically argued that the Examiner's evidence of prior use of the elements did not include a combination of "white sectional dividing walls with horizontal rows of red stripes, clear glass panels above the dividing walls, booths, barstools and chairs featuring red and/or red upholstery, a customer ordering area with sections of red tile walls and white tile walls, and a stainless steel counter."

6.      On 12/18/2014, the Examiner made final her refusal to register on grounds the applied-for mark was not distinctive, correctly stating that it would not be perceived as a service mark but only as decoration or ornamentation:

> In this case, the applied-for mark is not inherently distinctive because it is a mere refinement of common features of fast food restaurant interiors. It should be noted that restaurant interiors, by their intrinsic nature, decorate the restaurants and provide customers with a place to eat.  The attached evidence from newsnyork.com, coolcatcafe.com, Wikipedia.org, arbys.com, newsobserver.com, freshome.com, tripadvisor.com, thepai.org, pschwabe.com, and dcgreencontracting.com shows that restaurants such as McDonald's, Cool Cat Café, Arby's, Five Guys, Wendy's, IHOP, Burger King, and Jimmy John's also have red booths, barstools, red chairs, white tables, red and white tile, and clear glass panels.  Additionally, the attached evidence from swipely.com, kpetersen.com, jdics.com, and restaurantinteriors.com shows that red upholstery, and the color red in general are commonly used when designing restaurant interiors.  Therefore, the public is likely to view the applied-for mark as commonly-adopted form of ornamentation for applicant's services, and not an indicator of source.
>
> . . .
>
> Applicant argues that its trade dress is inherently distinctive because the exact combination of red and white elements in the applied-for mark is unique.  However, a showing of applicant's exact interior design used throughout the restaurant industry is not required to prove that the applied-for mark is not inherently distinctive.  Rather, the question at issue is whether the applied-for mark is a mere-refinement of a commonly-adopted form of ornamentation.  With the above-referenced evidence, the examining attorney has shown that red and white elements are commonly used in restaurant interior design.  Therefore, the public is unlikely to see applicant's red and white interior design trade dress as an inherently distinct indicator of source, and the refusal under Sections 1, 2, 3, and 45 is hereby made FINAL.

> In response to this refusal, applicant may submit evidence that the applied-for mark has acquired distinctiveness under Trademark Act Section 2(f) by **submitting examples of advertising and promotional materials that specifically promote the applied-for mark as a service mark in the United States, dollar figures for advertising devoted to such promotion**, dealer and consumer statements of recognition of the applied-for mark as a service mark, and any other evidence that establishes recognition of the matter as a mark for the services. See 37 C.F.R. §2.41(a); TMEP §§1212.06 et seq. **The evidence must relate to the promotion and recognition of the specific configuration embodied in the applied-for mark and not to the services in general.** See *In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008); *In re Edward Ski Prods. Inc.*, 49 USPQ2d 2001, 2005 (TTAB 1999); *In re Pingel Enter. Inc.*, 46 USPQ2d 1811, 1822 (TTAB 1998).

(bold emphasis added).

7. INO read and understood the contents of the Examiner's 12/18/2014 Final Refusal.

8. On 6/18/2015, INO requested reconsideration after the final office action and amended its application to state that its applied-for mark had acquired distinctiveness under section 2(f). In support of its request for reconsideration, INO stated, "The millions of dollars in advertising and deliberate marketing for decades have created a strong association between the trade dress and Applicant." INO attached 87 documents comprising over 200 pages of evidence purportedly supporting acquired distinctiveness of the applied-for mark, including a declaration by Carl Van Fleet, INO's Executive Vice President, attesting that INO between 2000 and 2012, INO had spent in excess of $100 million on a combination of radio, television, outdoor and print advertising.

9. INO knew, or should have known, that based on its arguments and especially the Van Fleet declaration, the Examiner would believe that INO had spent over $100 million in "promotion and recognition of the specific configuration embodied in the applied-for mark and not to the services in general."

12

10. On information and belief, INO did not spend over $100 million promoting the specific configuration of the applied-for mark. Indeed, on information and belief INO spent virtually no money advertising the specific configuration of the applied-for mark.

11. On information and belief, $100 million represents the totality of INO's advertising expenditures between 2000 and 2012.

12. INO attached several other declarations. On information and belief INO's legal counsel drafted these declarations and procured at least two of the declarations from persons having preexisting professional relationships with INO, specifically principals of its advertising agency and its architectural/engineering firm.

13. The declarations and representations made by INO during prosecution of its application were so intentionally misleading and incomplete as to constitute a misrepresentation of fact.

14. INO's Registered Trade Dress and alleged "Common Law Trade Dress" are comprised of colors and materials that are common among fast food restaurants. The elements are not distinctive either singularly or in combination. The arguments, declarations and other materials that INO attached to its responses to the Examiner's refusals did not supply evidence of acquired distinctiveness.

15. INO knew its representations and were false or misleading at the time they were made, or made the representations with reckless disregard to their truth or falsity.

16. The representations were made with the intent to induce the examiner to allow the registration of INO's trade dress service mark.

17. The examiner relied upon the ex parte representations made by INO, and the representations were material to the examiner's decision to allow the registration of INO's Registered Trade Dress No. 4,839,216.

18. The trade dress covered by Registration No. 4,839,216 is wholly descriptive and has not acquired distinctiveness and should be cancelled pursuant to the Trademark Act § 2(e)(1) and § 14(1); 15 U.S.C. § 1052(e)(1) and § 1064(1).

19. Registration No. 4,839,216 was obtained by fraud and is invalid, and should be cancelled pursuant to the Trademark Act § 14(3), 15 U.S.C. § 1064(3).

**COUNT 2: DECLARATORY JUDGMENT THAT INO'S TRADE DRESS IS NOT PROTECTABLE BECAUSE IT HAS NOT ACQUIRED SECONDARY MEANING, OF NONINFRINGEMENT, NO UNFAIR COMPETITION, and NO VIOLATION OF MICHIGAN'S CONSUMER PROTECTION ACT**

20. Defendants incorporate the prior paragraphs of their counterclaim.

21. There has been no actual confusion among patrons or potential patrons of the parties' restaurants.

22. There is no likelihood of confusion among patrons or potential patrons of the parties' restaurants.

23. Plaintiff In-N-Out Burger's Trade Dress is not inherently distinctive and has not acquired distinctiveness or obtained secondary meaning under any provision of the federal Trademark Act or under federal or state common law.

24. The restaurant décor, packaging, signage, and uniforms utilized by defendants/counterplaintiffs do not infringe INO's trade dress under the any provision of the federal Trademark Act or under federal or state common law.

25. The restaurant décor, packaging, signage, and uniforms utilized by defendants/counterplaintiffs do not constitute unfair competition under any state or federal statute or common law.

**JURY DEMAND**

Defendants/counter-plaintiffs demand a jury for all jury-triable issues.

**PRAYER FOR RELIEF**

Defendants/counter-plaintiffs pray for judgment:

- dismissing plaintiff's complaint in its entirety with prejudice;
- cancelling plaintiff's trade dress registration 4,839,216;
- declaring that plaintiff's trade dress is not protectable because it has not acquired secondary meaning;
- declaring that defendants do not infringe defendant's service mark;
- declaring that defendants have not engaged in unfair competition;
- declaring that defendants have not violated Michigan's Consumer Protection Act;
- declaring that this is an exceptional case and awarding defendants their costs and attorney fees under 15 USC § 1117(a); and
- such other relief as this Court deems equitable and just.

Respectfully submitted,

s/ Bradley L. Smith
Bradley L. Smith (P48138)
Endurance Law Group PLC
133 W. Michigan Ave., Ste. 10
Jackson, MI  49201
(517) 879-0253
bsmith@endurancelaw.com
*Attorneys for defendant*

Dated:  March 12, 2021

## CERTIFICATE OF SERVICE

      I certify that on March 12, 2021, the foregoing ANSWER, AFFIRMATIVE DEFENSES, FIRST AMENDED COUNTERCLAIMS AND JURY DEMAND to Plaintiff's Second Amended Complaint was filed with the Clerk of the Court, via the ECF system, which will provide electronic notification of the filing on all parties of record.

                                    s/Bradley L. Smith
                                    Endurance Law Group PLC
                                    133 W. Michigan Ave., Ste. 10
                                    Jackson, MI  49201
                                    (517) 879-0253
                                    bsmith@endurancelaw.com