```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF MICHIGAN
```

IN-N-OUT BURGERS,
a California corporation,
                                    Civil Action No.
            Plaintiff,                5:20-cv-11911

-vs-                                Hon. Robert H. Cleland

DOLL N BURGERS LLC,                 Magistrate Judge
DOLL N BURGERS TECUMSEH, LLC,         Anthony P. Patti
DOLL N BURGERS JACKSON, LLC
VERITAS VINEYARD, LLC
and JUSTIN DALENBERG,

            Defendants.
_____/

          DEPOSITION OF JEFFERY A. STEC, Ph.D.

taken by the Plaintiffs on the 29th day of June, 2021,

via Zoom, Chicago, Illinois, at 9:56 a.m.


APPEARANCES:

For the Plaintiffs:    MR. BRIAN D. WASSOM (P60381)
                       MS. REGINA GILMOUR (P83117)
                       Warner Norcross + Judd, LLP
                       45000 River Ridge Drive, Suite 300
                       Clinton Township, MI 48038
                       (248) 784-5039
                       bwassom@wnj.com

For the Defendants:    MR. BRADLEY L. SMITH (P48138)
                       Endurance Law Group PLC
                       133 West Michigan Avenue, Suite 10
                       Jackson, MI 49201
                       (517) 879-0253
                       bsmith@endurancelaw.com


    Reported by:       Angela L. Chritz, RPR, CSR-4305



Case 3:20-cv-11911-RHC-APP   ECF No. 61-1, PageID.3263   Filed 09/03/21   Page 2 of 6

IN-N-OUT BURGERS vs DOLL N BURGERS LLC, et al.                          Job 15262
STEC, JEFFERY 06/29/2021                                                     93

1        what you're saying?
2   Q.   I'm not following your response.  So let me start over
3        with a different question.
4   A.   Okay.
5   Q.   Asking the question in a different way.  Let's say I'm --
6        I'll try to make it as close to the reality as possible.
7        Let's say I am testing these treatment images of In-N-Out
8        Burger and I want to know whether or not these particular
9        images have secondary meaning in them.  And as a control
10       image, I use a picture of the Golden Arches, exterior of
11       the McDonald's sign -- of the McDonald's building, has
12       the Golden Arches on it, it's got Ronald McDonald all
13       over it, everything you could possibly associate with
14       McDonald's.
15              Let's say close to 100 percent of the
16       respondents identify those images with McDonald's, and
17       thus, all of them answer one company for the control
18       images.
19              Now, in that situation, it really doesn't
20       matter what images I show of the treatment images.  I get
21       a zero percent secondary meaning, but that doesn't
22       actually tell me anything about how many people have
23       secondary meaning in the In-N-Out trade dress, right?
24  A.   If you're saying that part of the hypothetical is that
25       the control percentage, in other words, the percentage of

Case 3:20-cv-11911-RHC-APP ECF No. 61-1, PageID.3264 Filed 09/03/21 Page 3 of 6

IN-N-OUT BURGERS vs DOLL N BURGERS LLC, et al. Job 15262
STEC, JEFFERY 06/29/2021 94

1       people/respondents that were shown that image, and I
2       believe you said it's the McDonald's images, would
3       associate it with McDonald's, one company, let's just say
4       one company, then that 100 percent would be netted
5       against whatever the percentage of people/respondents who
6       said one company from the treatment, the treatment could
7       be no more than 100 percent. So the net would be zero,
8       if not a negative number, if you were to do that type of
9       comparison.
10  Q.  Okay. All right. We're on the same page then.
11          So the result of that net zero though doesn't
12      tell me any useful information about the In-N-Out trade
13      dress because I haven't actually tested the In-N-Out
14      trade dress at that point, right.
15  A.  The way you've described the hypothetical, so I don't
16      know if In-N-Out would suggest that any of the McDonald's
17      trade dress and the images used in the control are part
18      of what's protected or asserted by In-N-Out, that I don't
19      know.
20          If you want to say the hypothetical -- in the
21      hypothetical that that's the case, In-N-Out wouldn't
22      assert any of its design elements against McDonald's,
23      then I can agree with you that there's no way then you
24      could test those design elements for In-N-Out by showing
25      McDonald's pieces of information.

Case 3:20-cv-11911-RHC-APP ECF No. 61-1, PageID.3265 Filed 09/03/21 Page 4 of 6

IN-N-OUT BURGERS vs DOLL N BURGERS LLC, et al.  Job 15262
STEC, JEFFERY 06/29/2021  95

1  Q.  Okay. So then you'd agree with me that separate from
2      this question of are we changing only the things in the
3      trade dress, you also don't want to introduce noise in
4      the control images by introducing secondary meaning that
5      is unrelated to the trade dress as well, right? That
6      would artificially deflate the net secondary meaning
7      number?
8  A.  So if you're asking whether you'd want to introduce in
9      the control images, design elements, whatever you want to
10     call them -- I'm sorry.
11 Q.  No, keep going.
12 A.  I heard feedback I thought someone else was talking.
13 Q.  No.
14 A.  So if you wanted to test the -- you wanted to create the
15     control and you wanted to make sure the control wouldn't
16     be associated with one source because of other design
17     elements, that would perhaps be associated with one
18     company, then you could potentially consider that in the
19     context of the control by removing those design elements.
20          So at the end of the day, to make it as
21     concrete as possible, one of the things I did in my
22     survey was to remove the palm trees, because I understand
23     that was something that was filed as a trademark by
24     In-N-Out, I believe it was a fairly long time ago, and so
25     by leaving that in the control, which doesn't appear

Case 3:20-cv-11911-RHC-APP   ECF No. 61-1, PageID.3266   Filed 09/03/21   Page 5 of 6

IN-N-OUT BURGERS vs DOLL N BURGERS LLC, et al.                    Job 15262
STEC, JEFFERY 06/29/2021                                              203

```
 1        one source, but they didn't know the name of it, they're
 2        still going to answer this question no, right?  Or don't
 3        know, one of the two?
 4   A.   So if they have an opinion about what company puts out
 5        the products from this quick service restaurant, they
 6        would presumably answer yes.  So they would answer
 7        Question 1 yes.  And then if they answered yes, they
 8        would be asked what company do you think puts out the
 9        product.  And type in whatever they want, or if they
10        didn't know, they would then enter that.
11   Q.   Let's say they're familiar with the dress, they've seen
12        it a hundred times, name's on the tip of their tongue,
13        just can't think about it, so they have to answer
14        "don't know," but they're intimately familiar with the
15        dress.  They're still going to answer "don't know"?
16   A.   Well, if they're intimately familiar with the trade
17        dress, then it begs the question how they don't know the
18        name of the company.  But if they -- if what you say is
19        what happens, so they're intimately aware of the trade
20        dress, but they can't think of the name of the company,
21        then presumably they would say "don't know."
22   Q.   That's ultimately going to count as somebody in your
23        survey for whom they're not confused, correct?
24   A.   This is going to be -- so let's, I guess, put this in the
25        proper context.  First what they're going to see before
```

Case 3:20-cv-11911-RHC-APP   ECF No. 61-1, PageID.3267   Filed 09/03/21   Page 6 of 6

IN-N-OUT BURGERS vs DOLL N BURGERS LLC, et al.                Job 15262
STEC, JEFFERY 06/29/2021                                           204

```
 1       they get to these questions is the junior user's images
 2       or stimuli.  So you're paging through some of it now.
 3       That stimuli is what they're going to see.  So if they
 4       think that's associated with somebody, but they can't
 5       think of who it is, then they would say "don't know" to
 6       Question 2.  And because they don't know who it is, then
 7       essentially they would be counted as somebody who isn't
 8       confused.
 9  Q.   Who is not confused.  You cut out at the end there.  You
10       count it as what?
11  A.   Somebody who was not confused.
12  Q.   Now, you didn't alter the identifying information here in
13       this picture on page 34 that says "Doll N Burgers,"
14       correct?
15  A.   That's correct.  That was the way it appeared in the
16       original picture.
17  Q.   Right.
18            And are you familiar, did you read through the
19       comments the number of people who said -- who identified
20       Doll N Burgers because they said that's what it said on
21       the building or that's what it said on the sign?
22  A.   I did read the open-ended answers and I believe we
23       created a table farther down in the report that gives the
24       open-ended answers at least categorized.
25  Q.   Well, as you categorized them, right?
```